UNITED STATES v. HOLLAND.

No. 9281.

Circuit Court of Appeals, Ninth Circuit.

May 13, 1940.

Benjamin Harrison, U. S. Atty., and Attilio Di Girolamo, Atty., Dept. of Justice, both of Los Angeles, Cal., and Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to Atty. Gen., and Thomas E. Walsh, Atty., Dept. of Justice, of Washington, D. C., for appellant.

Alvin Gerlack, of San Francisco, Cal., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

GARRECHT, Circuit Judge.

On the twenty-seventh day of June, 1938, Wilson A. Holland, as plaintiff, filed a complaint in the court below against the United States of America, as defendant, on a policy of war risk insurance. He alleged that he served in the United States Army between the dates of May 6, 1917, and August 3, 1920; that while serving in said army he applied for and was issued a policy of war risk insurance in the sum of $10,000; that said policy was reinstated on April 1, 1927, in a like sum, and there was issued him a converted insurance policy; that premium payments were made to keep said converted policy in effect until November 30, 1933; that while such policy was in effect he contracted pulmonary tuberculosis and other disabilities; that said disease and disabilities rendered him totally and permanently disabled since August 30, 1933; that he submitted due proof thereof to the United States Veterans Administration; that payment of benefits under said policy was refused; and that a disagreement existed. The complaint concluded with a prayer for judgment. The defendant answered and thereafter the cause proceeded to trial. The jury returned a verdict in favor of the plaintiff, fixing the date of his total permanent disability as August 30, 1933. Judgment was entered for plaintiff March 2, 1939, from which judgment defendant appeals. The only question presented by the appellant is: "Whether there was any substantial evidence to establish that plaintiff became totally and permanently disabled on August 30, 1933, or before the expiration of the grace period on December 31, 1933." It was admitted

at the trial that "With the grace period, the insurance was in force until December 31, 1933."

The facts are as follows:

At the time of the trial, February 28, 1939, the plaintiff was a patient in the United States Veterans' Hospital, San Fernando, California, and had been there since October 1, 1938. Holland first began to take treatments for tuberculosis in 1924; in 1925 he was hospitalized in the United States Veterans' Hospital at Fort Lyon, Colorado. He left that hospital in that year and for two years thereafter did no work and at the expiration of that time he was advised by the Bureau doctors that he was able to work. The plaintiff was under the care of or examined by Veterans' Bureau doctors once in 1924, twice in 1925, once in 1926, three times in 1927, once in 1931, and once in 1932. He entered the Veterans' Hospital at San Fernando in the summer of 1936 as a result of a hemorrhage of the lungs, and remained there more than a year.

In March, 1922, the plaintiff became postmaster at a small post office in Iowa, a position which officially he held until March, 1927, although he became ill in September, 1924, and took leave of absence for the remainder of his term as postmaster. For two months thereafter he was unemployed; then he secured work as a postal clerk in Glendale, California, working there from June to December, 1927. He left this employment to accept a position in the accounting department of Pickwick Corporation in Los Angeles, California, where he remained until January, 1931. Next, he attended Southwestern University in Los Angeles as a part-time student, where he continued, except for two months temporary work as a Deputy Assessor of Los Angeles County, until about March, 1933. The work record just rehearsed is not important, save as "background."

March, 1933, Holland obtained employment as Institutional Bookkeeper at the State Narcotic Hospital, Spadra, California. The salary was $120 per month, plus maintenance, which amounted to $11 per month. He held this position until the end of August, 1933, when he left because he felt he "could not carry on for the time being any further." He said he was tired and worn out and was advised by a physician that he must rest.

On cross-examination it was developed that the position was abolished as of June 30, 1933, but he remained there through July and August, nevertheless. On August 30, 1933, he was examined by Dr. Robert E. Wyres, the Assistant Superintendent at Spadra, who, after a chest examination, X-ray, and study of the case history, found Holland to be suffering from active tuberculosis, chronic, "on the borderline between moderately and far advanced." He then rested in bed for a few months, arising for his meals; he was in bed about twenty hours a day. This caused his nervous condition to improve, but failed to eradicate his feeling of fatigue. November, 1933, he made the last payment of a premium on his converted or reinstated policy of insurance. In December, 1933 he was offered, and accepted, a position in the accounting office of the State Relief Administration in Los Angeles at a salary of $125 a month. He said it was necessary for him to return to work at that time. Holland continued in this position until August, 1935; he temporarily withdrew from this employment, however, for a period of approximately one week, from May 27 to June 3, 1934, to work as a bookkepper at the Preston School of Industry, Ione, California. When he made application for this position he was informed that a physical examination would be necessary, but later he told the interviewer that he feared he could not pass such an examination; so, in view of the fact that he previously had worked in the State service and Department of Institutions, it was agreed to waive the physical examination. After about a week on this job, fear that he would lose his civil service status if he was subjected to an examination and his physical condition became known caused Holland to resign this position and return to Los Angeles. Sometime following return to his position in Los Angeles the office was moved to San Francisco, and his salary increased to $170 a month. In August, 1935, he left that position to accept employment with the United States Government in the Treasury Accounts Division, at San Francisco, at a monthly salary of $225, where he remained until August, 1936, at which time he suffered a hemorrhage of the lungs, and entered the San Fernando Hospital. The plaintiff testified that while he held these last two jobs he suffered from increased coughing

and was weighed down by a sense of fatigue; that he would sometimes take a day off and spend the entire twenty-four hours in bed; that on one occasion he became so tired that he took a week off from work and went into the desert and rested. He said further that normally his duties would not be considered difficult or arduous; that part of the time he actually worked on books and part time he supervised the work of other employees. Most of his spare time, nights after work, Sundays and Saturdays, was spent resting in bed.

Appearing as a witness, the plaintiff's wife testified relative to the period about August, 1933, that the plaintiff was always tired, always on the verge of a cold and had a "terrible" appetite, and suffered night sweats. She said that when he came home week ends from Spadra he spent Saturday and Sunday in bed. Harold A. R. Carleton, Holland's superior in the State Relief Administration, gave testimony that Holland's duties were of a consulting and advisory nature; that he was faithful to his tasks, but seemed to tire easily and was absent from work quite frequently; that he appeared to be unwell. The witness said he believed Holland was off work on an average of one day a week; that Holland's duties were not arduous, it was a "light" job; that the plaintiff was not required to do any night work, although other employees were; that there was no deduction made in Holland's salary for these absences, and the State payroll would not reveal them.

Roy W. Burton, Holland's immediate superior from December, 1933, to May, 1934, in the State Relief Administration, testified that Holland was quite thin when he knew him; that Holland seemed to lack energy, was always tired, subject to colds, and coughed considerably. The witness further stated that the plaintiff never helped during the time others of the staff were doing night work. The plaintiff's witnesses included a Dr. Harry Cohn, a man of wide experience in the tuberculosis field, who first examined Holland in January, 1937, and, apparently, again in February or June, 1939. Dr. Cohn made a thorough examination and, as a result thereof, concluded that the plaintiff was suffering from active tuberculosis, far advanced, in January, 1937. He also examined the X-ray taken at Spadra August 30, 1933, and stated that it revealed active tuberculosis present at the time the film was taken. The deposition of Dr. Mary Jones Mentzer, who examined the plaintiff September 19, 1935, was read in evidence. The doctor diagnosed the disease as "Bilateral tuberculosis (both lungs)—pulmonary, more extensive on right," complicated by acute pleurisy at the time. The tuberculosis was active on that date and on the borderline between moderately and far advanced.

The above recital of facts covers substantially all of the evidence introduced by the plaintiff upon the question at issue. We deem it unnecessary to set forth defendant's evidence. At the conclusion of all the evidence the defendant moved for a directed verdict in its favor, which was denied by the trial court, and the cause was submitted to the jury. The policy sued on defines total permanent disability as follows: "Total permanent disability as referred to herein is any impairment of mind or body which continuously renders it impossible for the disabled person to follow any substantially gainful occupation and which is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it."

■ This definition is practically the same as that promulgated March 9, 1918, by the director of the bureau (T.D. 20 W. R.), pursuant to the Act of October 6, 1917, 40 Stat. 399. In Lumbra v. United States, 290 U.S. 551, 558, 559, 560, 54 S.Ct. 272, 275, 78 L.Ed. 492, the Supreme Court said, "The phrase 'total permanent disability' is to be construed reasonably and having regard to the circumstances of each case. * * * 'Total disability' does not mean helplessness or complete disability, but it includes more than that which is partial. 'Permanent disability' means that which is continuing as opposed to what is temporary." See also United States v. Spaulding, 293 U.S. 498, 504, 55 S.Ct. 273, 79 L.Ed. 617.

■ From the many decisions determining the question at issue here it may be said that to sustain a verdict certain facts must appear. It was necessary for the plaintiff to prove, by a fair preponderance of the evidence, that he became totally permanently disabled within the life of the policy, that is, on or prior to December 31, 1933. This burden is not carried by leaving the evidence in the realm of specu-

lation. If the testimony leads as reasonably to one hypothesis as to another, it tends to establish neither. See Deadrich v. United States, 9 Cir., 74 F.2d 619, 622, and cases there cited. A Federal Court is not permitted to submit a case to a jury on probabilities or a mere scintilla of evidence, but there must be some substantial evidence offered by the plaintiff to justify submission of the case to the jury. Slocum v. New York Life Ins. Co., 228 U.S. 364, 369, 33 S.Ct. 523, 57 L.Ed. 879, Ann.Cas.1914D, 1029; Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; United States Fidelity & Guaranty Co. v. Blake, 9 Cir., 285 F. 449, 452; United States v. Burke, 9 Cir., 50 F.2d 653, 656; Deadrich v. United States, 9 Cir., supra, 74 F.2d at pages 621, 622; United States v. Thompson, 9 Cir., 92 F.2d 135, 139. In the examination of this question we are not to weigh the evidence; what our verdict would have been as jurymen is immaterial; it is likewise immaterial that the court may be of opinion that the evidence preponderates in favor of the party making the motion—the responsibility of weighing the facts is the jury's. United States v. Dudley, 9 Cir., 64 F.2d 743, 744. We must assume as established, however, all the facts that the evidence supporting plaintiff's claim reasonably tends to prove, and there should be drawn in his favor all the inferences fairly deducible from such facts. Lumbra v. United States, 290 U.S. 551, 553, 54 S.Ct. 272, 78 L.Ed. 492; Gunning v. Cooley, supra, 281 U.S. at page 94, 50 S.Ct. 231, 74 L.Ed. 720.

Here the only difficulty presented is the appellee's work record. Is this rather extensive work record such a physical fact as positively contradicts the appellee's evidence of total permanent disability? It is a rule of uniform application in the Federal Courts that where testimony is positively contradicted by the physical facts neither the court nor jury can be permitted to give it credence. Deadrich v. United States, supra; United States v. Harth, 8 Cir., 61 F.2d 541, 544; United States v. Kerr, 9 Cir., 61 F.2d 800, 803. Employment may be of such duration and nature that it conclusively refutes any idea that the insured might have been totally permanently disabled prior to and during such employment. Nicolay v. United States, 10 Cir., 51 F.2d 170, 173; United States v. Harth, supra. However, "The·

mere fact that one has done some work after the lapse of his policy is not of itself sufficient to defeat his claim of total permanent disability. He may have worked when really unable and at the risk of endangering his health or life." Lumbra v. United States, supra, 290 U.S. at page 560, 54 S.Ct. at page 276, 78 L.Ed. 492. See United States v. Spaulding, supra, 293 U.S. at page 505, 55 S.Ct. 273, 79 L.Ed. 617; United States v. Fairbanks, 9 Cir., 89 F.2d 949, 953.

This court knows that tuberculosis is a progressive disease; incipient, it oftens responds to proper treatment, which arrests the progress of the disease and leaves the victim with many years of useful life, under favorable conditions. On the other hand, many cases are incurable from the start, resisting the most enlightened medical treatment.· Here we are confronted with a case where, on a date when the policy was in force, the plaintiff was suffering from pulmonary tuberculosis, active, chronic, "on the borderline between moderately advanced and far advanced." It had passed the incipient stage. In these circumstances any work performed would be at the risk of endangering health or life, or both. On the day following this diagnosis the plaintiff left his employment and rested for three months; he returned to work under necessity. Plaintiff's medical history proves that he was unable to work without material injury to his health or risk of endangering his life. The work record, therefore, does not conclusively refute his claim of total permanent disability. Such a deduction finds support in numerous decisions.

This court said in United States v. Lawson,·9 Cir., 50 F.2d 646, 651, a tuberculosis case (with complications): "It might be argued that the fact that plaintiff managed to hold several positions for the greater part of the time during the years in question, and actually engaged in work, proves that he was able to work and not totally and permanently disabled. But this does not necessarily follow. It is a matter of common knowledge that many men work in the stress of circumstances when they should not work at all. When they do that they should not be penalized, rather should they be encouraged. A careful examination and consideration of the evidence herein convinces us that the plaintiff worked when

he was physically unable to do so, and that, but for the gratuitous assistance of friends and relatives who did much of his heavy work and the assistance of those whom plaintiff employed at his own expense, he would have been unable to retain his several positions. Under such circumstances, he should not be made to suffer for carrying on when others less disabled than he would have surrendered."

The Circuit Court of Appeals for the Fourth Circuit, in Carter v. United States, 49 F.2d 221, 223, a tuberculosis case, said: "The mere fact that a claimant may have worked for substantial periods during the time when he claims to have been permanently and totally disabled is not conclusive against him. The question is not whether he worked, but whether he was able to work, i. e., whether he was able to follow continuously some substantially gainful occupation without material injury to his health. Of course, the fact that a man does work is evidence to be considered by the jury as tending to negative the claim of disability; but the fact that he works when physically unable to do so ought not defeat his right to recover if the jury finds that such disability in fact existed. In the case of tuberculosis the patient is notoriously able to carry on for a while and do a substantial amount of work, but in most cases the attempt to carry on results in an aggravation of the disease frequently ending in the death of the patient. * * *"

And in United States v. Brown, 72 F. 2d 608, 610, the Tenth Circuit Court of Appeals had this to say:

"The United States contends that Brown's work record refutes the claim of total and permanent disability. Employment may be of such a nature and duration that it conclusively refutes any idea of total and permanent disability. On the other hand a person who is incapacitated to work, impelled by necessity and aided by a strong will, may engage in work that aggravates his condition and hastens his death. [Cases cited.]

"One who has a serious and incurable ailment, for which rest is the recognized treatment and which will be aggravated by work of any kind, is nevertheless totally and permanently disabled, although he may for a time engage in gainful employment. One so incapacitated may only work at the risk of injury to his health and danger to his life."

In another case from the same Circuit, United States v. Higbee, 72 F.2d 773, 775, that Court used the following language: "* * * And work done under pressure of necessity, when health requires rest, does not necessarily disprove disability. The jury may well have found that insured was totally and permanently disabled, that his condition required rest and inactivity, but that the inescapable necessity to earn a livelihood for himself and his family spurred him to work with injury and aggravation of his physical condition. If so, he is not barred from recovering upon his contract. [Cases cited.]"

See also United States v. Phillips, 8 Cir., 44 F.2d 689, 691; United States v. Flippence, 10 Cir., 72 F.2d 611, 613; United States v. Sorrow, 5 Cir., 67 F.2d 372; and United States v. Godfrey, 1 Cir., 47 F.2d 126, 127. The decisions quoted and cited would seem quite conclusive, but there is another decision of this court which appears to us to be squarely in point. In United States v. Hill, 9 Cir., 99 F.2d 755, 756, the plaintiff-appellee served as a trained nurse in the military service of the United States. During her period of service, and afterwards, she suffered from pulmonary tuberculosis and a heart condition; she brought suit on her policy of war risk insurance and recovered judgment. On appeal from the judgment this court, speaking through Judge Wilbur, said:

"It is claimed, and it must be conceded, that the appellee's heart condition, and the diagnosis that the tuberculosis was moderately advanced, differentiates her case from those in which it has been held that incipient tuberculosis is a curable disease and that recovery for total and permanent disability cannot be based upon such a diagnosis. The testimony of experts called by the appellee, who had made physical examinations of her, was to the effect that her heart condition was permanent; that rest was the proper treatment for both the tubercular condition and the heart disease; that she could not work without aggravating both heart and lung conditions, and that such work as she did aggravated both, and that she could not carry on the work of a nurse or any other work without further impairing her health. This evidence brings the case squarely within the rule that if an insured cannot work without imperiling his health, the fact that work is done under such cir-

cumstances does not negative the claim of total and permanent disability. [Cases. cited.]

"It appears from the evidence that appellee frequently worked as nurse for compensation. If this evidence stood alone it might justify the conclusion that because appellee did in fact work, there were periods when she was not totally disabled and, consequently, that her condition was not permanent. But, as we have stated, there was substantial evidence from which the jury could have determined that she was not able to work without impairing her health at the time she worked."

The judgment appealed from in this case is affirmed.