**Thanh Vong HOAI, Appellant,**

v.

**SUN REFINING AND MARKETING COMPANY, INC.**

No. 88–7136.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 12, 1988.

Decided Feb. 7, 1989.

Laurence A. Elgin, with whom John D. Hemenway, Washington, D.C., was on the brief, for appellant.

J. Gordon Forester, Jr., with whom Stephen H. Abraham, Washington, D.C., was on the brief, for appellee.

Before WALD, Chief Judge, and EDWARDS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This case arises out of a dispute between appellant Thanh Vong Hoai ("Hoai") and Thanh Van Vo ("Vo") regarding control of a gasoline station in the District of Columbia. Vo sued Hoai and the gasoline supplier, Sun Refining and Marketing Company ("Sunoco"), in D.C. Superior Court, and subsequently entered into a consent order with Sunoco under which Sunoco agreed to supply gasoline to Vo. Hoai then sued Sunoco in federal court, alleging that Sunoco had unlawfully terminated his gasoline franchise in violation of the Federal Petroleum Marketing Practices Act ("PMPA"). Hoai appeals from the District Court's order granting a stay of the federal action pending resolution of the Superior Court action. Because we find no basis for the District Court's refusal to allow Hoai to adjudicate his federal claims in federal court, we reverse.

## I. BACKGROUND

Hoai had a franchise from appellee Sunoco to operate a Sunoco gasoline station in the District of Columbia. Hoai claims that he was threatened with murder and then "driven out" of his gas station by Vo, "with the help of other Vietnamese, a self-styled 'mafia.'" Brief of Appellant at 3. Hoai also claims that he informed Sunoco of the threats to kill him and of fraud perpetrated against him by the other Vietnamese.

After Hoai attempted to recover his station from Vo, Vo filed suit in D.C. Superior Court against Hoai, Sunoco and others on August 28, 1986. Following a hearing the next day, the court granted a temporary restraining order ("TRO") that reinstated Vo in the gas station, removed Hoai from the station, and directed Sunoco to continue supplying petroleum products to the station.

On September 8, 1986, the Superior Court ratified a consent order between Sunoco and Vo. The order extended the TRO for seven months as to Sunoco and Vo, and required Sunoco to continue to supply petroleum products to the station after the expiration of the TRO, until the dispute between Vo and Hoai was resolved or the franchise terminated. Civ. No. 7075-86, slip op. (D.C.Sup.Ct. Sept. 8, 1986). The effect of the consent order was specifically limited to Sunoco and Vo. *See id.*, slip op. at 3.

Hoai was not informed about the consent order until after it was ratified. He then appealed the order to the D.C. Court of Appeals. The appeal was still pending on April 7, 1987, when Sunoco terminated the franchise. Neither Hoai nor Vo is now in possession of the station. On January 15, 1988, Sunoco was dismissed as a defendant in Superior Court.[1] On March 14, 1988, the D.C. Court of Appeals ruled that Hoai's appeal of the consent order was moot, and the court remanded the case to the Superior Court for a trial on the merits of Vo's claim against Hoai.

Meanwhile, on September 8, 1987, Hoai filed suit in federal court against Sunoco, alleging that Sunoco had unlawfully terminated Hoai's franchise in violation of the PMPA by entering into the agreement with Vo embodied in the consent order. Hoai sought declaratory relief and $30 million in damages. Sunoco moved to dismiss the complaint on abstention grounds.

On May 26, 1988, the District Court denied the motion, but *sua sponte* stayed the proceedings pending resolution of the litigation in Superior Court. Civ. No. 87–2456–LFO, slip op. (D.D.C. May 26, 1988) [1988 WL 58921]. The District Court agreed with Sunoco that "the general principles of [*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), and *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971),] may justify granting of the motion to dismiss." *Id.*, slip op. at 3. However, noting that the abstention question was not clear cut and that it could consume years of litigation, the court ruled that "[t]he practical and fair solution at this stage is to stay proceedings in this Court without resolving exotic jurisdictional issues at the expense of these particular litigants." *Id.* at 3–4. Hoai appealed, and we now reverse.

## II. THE LAW GOVERNING STAYS AND DISMISSALS OF FEDERAL ACTIONS IN FAVOR OF ONGOING PROCEEDINGS

The first question to be considered in this case is whether the district court was correct in suggesting that a stay was an appropriate means of avoiding questions arguably posed by *Younger* and *Pennzoil.* Under the *Younger/Pennzoil* doctrine of abstention, or equitable restraint, a federal court may dismiss an action when there is a direct conflict between the exercise of federal and state jurisdiction and considerations of comity and federalism dictate that the federal court should defer to the state proceedings. *See Younger*, 401 U.S. at 43–45, 91 S.Ct. at 750–51; *Pennzoil*, 107 S.Ct. at 1525–26. By choosing to grant a "stay" rather than to dismiss the case, the District Court apparently believed that it could avoid deciding whether *Younger* abstention was proper. This position is mistaken as a matter of law. The Supreme Court has clearly held that "a stay is as much a refusal to exercise federal jurisdiction as a dismissal," because a decision to defer to proceedings in state court "necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28, 103 S.Ct. 927, 943, 74 L.Ed.2d 765 (1983).

Although *Moses H. Cone* involved a stay under the *Colorado River* doctrine, *see Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), rather than equitable restraint under *Younger* or *Pennzoil*, the Court's reasoning is equally applicable here. Regardless of the theory invoked, both a stay and a dismissal operate to deny the plaintiff a federal forum. Consequently, while it might be appropriate to stay rather than dismiss a case if dismissal is otherwise justified, *see Bledsoe v. Crowley*, 849 F.2d 639, 645 (D.C.Cir. 1988), the court must first determine that it is warranted in refusing to exercise its jurisdiction. The District Court, however, offered no justification for its denial of Hoai's federal forum, and we can find no basis to support the court's stay.

---

1. On August 26, 1988, after the District Court stayed Hoai's federal action against Sunoco, Hoai filed a third-party claim against Sunoco in the Superior Court action.

■ It is difficult to understand why the parties at trial looked solely to *Younger/Pennzoil*, with no apparent recognition of the possible applicability of *Colorado River* and *Moses H. Cone*. The *Colorado River* doctrine, which was amplified in *Moses H. Cone*, instructs that only truly "exceptional circumstances" will allow a federal court to stay or dismiss a federal action in favor of a concurrent action before a state court. The court in *Colorado River* noted that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246; *accord Moses H. Cone*, 460 U.S. at 15, 103 S.Ct. at 936. However, even though the *Colorado River* doctrine is narrower in application than the *Younger* doctrine, the Court has also pointed out that abstention itself " 'is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.' " *Colorado River*, 424 U.S. at 813, 96 S.Ct. at 1244 (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959)).[2]

The policies underlying the *Younger* and *Colorado River* doctrines are somewhat different, with the latter focused principally on situations involving parallel or concurrent proceedings in federal and state courts. The main point here is that neither the *Younger/Pennzoil* doctrine nor the *Colorado River/Moses H. Cone* doctrine admits of a significant exception to the duty of a district court to adjudicate a controversy properly before it; and we can find no basis under either doctrine to justify a dismissal or stay of appellant's case.

## III. The *Younger/Pennzoil* Doctrine

Generally, it is understood that "*Younger* abstention," or equitable restraint, *but see* note 2 *supra*, is mandated only when state "proceedings are pending, if the State's interests in the proceeding are so important that the exercise of the federal judicial power would disregard the comity between the States and the National Government. *E.g., Huffman v. Pursue, Ltd.*, 420 U.S. 592, 603–05 [95 S.Ct. 1200, 1207–09, 43 L.Ed.2d 482] ... (1975)." *Pennzoil*, 107 S.Ct. at 1526. Sunoco claims that such considerations of comity and federalism justify the District Court's stay in the instant case, because Hoai's claim is based on the legality of a consent order ratified by the Superior Court. Yet, there are several clear reasons why equitable restraint under *Younger/Pennzoil* was not proper here and why the adjudication of Hoai's claims in federal court will not unduly interfere with the proceedings in the Superior Court.

■ For *Younger/Pennzoil* to apply, a rigid three-prong test must be satisfied: first, a federal court may dismiss a federal claim only when there are ongoing state proceedings that are judicial in nature; second, the state proceedings must implicate important state interests; third, the proceedings must afford an adequate opportunity in which to raise the federal claims. *See Middlesex County Ethics Comm. v.*

---

2. In making this point in *Colorado River*, the Court was referring to all forms of "abstention," including the *Pullman* doctrine, *see Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), covering cases in which a " 'federal constitutional issue ... might be mooted or presented in a different posture by a state court determination of pertinent state law.' " *Colorado River*, 424 U.S. at 814, 96 S.Ct. at 1245 (quoting *County of Allegheny*, 360 U.S. at 189, 79 S.Ct. at 1063). For a long time, the *Pullman* and *Younger* doctrines were quite distinct, with the former resulting only in abstention (or delay) of a pending federal action and the latter resulting in a dismissal with prejudice.

*See generally* Edwards, *The Changing Notion of "Our Federalism,"* 33 WAYNE L. REV. 1015 (1987). However, in *Pennzoil*, the Court suggested a new approach with respect to all abstention doctrines:

[C]onsiderations similar to those that mandate *Pullman* abstention are relevant to a court's decision whether to abstain under *Younger*. The various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases. Rather, they reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes. 107 S.Ct. at 1526 n. 9 (citation omitted).

*Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); *see also Pennzoil,* 107 S.Ct. at 1527. The District Court, however, did not even purport to apply the *Middlesex* test. Rather, the trial court merely speculated that the *Younger/Pennzoil* doctrine *"may* justify granting of the motion to dismiss." Slip op. at 3 (emphasis added). The District Court resorted to what it viewed as a "practical and fair solution ... without resolving exotic jurisdictional issues." Slip op. at 3–4. This approach does not offer a legitimate basis for abstaining from the exercise of federal jurisdiction under *Younger/Pennzoil.*

■ It is clear that there is an ongoing proceeding in Superior Court, satisfying the first prong of the *Middlesex* test. However, there is nothing in the record from the trial court to indicate that the federal action will "unduly interfere with" the action in Superior Court, *Younger,* 401 U.S. at 44, 91 S.Ct. at 750, or that any "vital state interests are involved," as required by *Middlesex,* 457 U.S. at 432, 102 S.Ct. at 2521; *see Pennzoil,* 107 S.Ct. at 1527, or that the Superior Court proceedings will afford an adequate opportunity for the appellant to pursue his federal claims.

First, Hoai has not sought to attack any judgment of the Superior Court. The Superior Court simply ratified a voluntary agreement between Vo and Sunoco. The consent order did not represent an exercise of the Superior Court's independent judgment and Hoai has not attacked that judgment. Rather, Hoai's sole complaint involves Sunoco's agreement to continue supplying gasoline to Vo rather than to Hoai, not the Superior Court's resolution of the dispute between Vo and Sunoco or between either of those parties and Hoai.

Second, the actions in District Court and Superior Court are not coextensive. The consent order on its face involved only Vo and Sunoco and did not purport to decide any of the issues involving Hoai. Rather, the Superior Court specifically stated that "[t]his Consent Order shall not be construed to extend the said Restraining Order as to any other defendant." Civ. No. 7075–86, slip op. at 3. The Superior Court never had an occasion to pass on Hoai's federal PMPA claims, which were not even part of the Superior Court case until Hoai was forced to add them two years after the consent order and four months after the District Court stayed the federal action.

Third, the District Court clearly has priority in time over the Superior Court with respect to the federal claims, which were filed in federal court a full year before Hoai added them to the Superior Court action. Even then, Hoai brought the federal claims in the Superior Court only after the District Court refused to adjudicate them in federal court, and he certainly should not be penalized now for attempting to protect his interests in response to the District Court's action.

Fourth, Hoai's claim rests solely on federal law—the PMPA. While the Superior Court may have authority to litigate the federal claims, the District Court incorrectly assumed that Hoai had to justify his desire to litigate his federal claims in federal court. Rather, the exact opposite is true. As the Supreme Court has clearly stated, "the federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them,'" *Moses H. Cone,* 460 U.S. at 15, 103 S.Ct. at 936 (quoting *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246), and Hoai has a clear right to a federal forum unless there are exceptional circumstances depriving him of that forum.

Fifth, the consent order expired over a year and a half ago, and Hoai merely seeks damages from Sunoco for terminating Hoai's franchise. Hoai is not attempting to upset a standing order of the Superior Court. Sunoco was not even a defendant in the Superior Court case at the time the stay was granted, and a resolution of the dispute between Sunoco and Hoai would not interfere with the Superior Court's adjudication of the controversy between Vo and Hoai.

Finally, it appears that the Superior Court judge himself wished to simplify the case in his court by separating out the federal claims. In a scheduling conference

on September 16, 1988, the judge suggested that the issues arising out of the dispute between Hoai and Vo

> could be severed out of this case and tried here preserving all the other issues that make this case more complicated about the behavior of Sun Oil and the franchise agreements and whether or not the franchise could be transferred in violation of the Petroleum Marketing Act. . . .

Transcript of Scheduling Conference at 24, *Vo v. Hoai,* Civ. No. 7075–86 (D.C.Sup.Ct. Sept. 16, 1988); *see also id.* at 27 ("Speaking only to the question of whether we can simplify the Superior Court litigation and expedite part of this case at least without depriving you [Hoai's counsel] in any way of your right to litigate the rest of it, perhaps after the Federal Court case runs its course; is there any way you can think of to do that?"). Certainly, the Superior Court did not appear to view the exercise of federal jurisdiction as an attack on its sovereignty or as lacking in "comity."

Consequently, we find absolutely no basis for the application of *Younger/Pennzoil* equitable restraint in this case.

### IV. THE *COLORADO RIVER/MOSES H. CONE* DOCTRINE

■ Sunoco also argues that the District Court's stay was appropriate under the doctrine of *Colorado River, supra.* We find, however, that the *Colorado River* doctrine furnishes no independent ground justifying the District Court's stay in this case. Indeed, the District Court did not even rely on *Colorado River* in issuing its stay.

In *Colorado River,* the Supreme Court found that dismissal of an action in federal court was appropriate because of "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)). This concern for "wise judicial administra-

tion" arguably encompasses the District Court's apparent concern over the complications that might be caused by parallel federal and Superior Court proceedings in this case. However, the Supreme Court has clearly instructed that *Colorado River* may not be invoked as a means of getting rid of cases that properly belong in federal court, and that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1246; *accord Moses H. Cone,* 460 U.S. at 15, 103 S.Ct. at 936. Rather, *Colorado River* created a narrow exception to the exercise of federal jurisdiction, and only truly "exceptional" circumstances will justify a stay or dismissal on grounds of judicial economy. *Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1247; *Moses H. Cone,* 460 U.S. at 15, 103 S.Ct. at 936; *see also Gulfstream Aerospace Corp. v. Mayacamas Corp.,* —— U.S. ——, 108 S.Ct. 1133, 1144, 99 L.Ed.2d 296 (1988).

In the instant case, however, the District Court did not purport to find any such circumstances, exceptional or otherwise, to justify the stay. It is arguably possible to rely on *Colorado River* insofar as the Court there cited the avoidance of piecemeal litigation as a factor that might favor a stay. *See* 424 U.S. at 819, 96 S.Ct. at 1247. That factor assumed importance in *Colorado River* because the litigation there involved a federal statute under which Congress had explicitly recognized the availability of state systems for the adjudication of water rights and had expressed a strong policy favoring resolution of those rights in a single, comprehensive forum. *See id.* at 819–20, 96 S.Ct. at 1247–48. No such policy is implicated in the case at bar, and the mere desire to resolve all issues involving related facts in one court does not justify depriving Hoai of his federal forum. As the Supreme Court has made clear, " 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal

Court having jurisdiction....'" *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910)). In fact, in light of the Superior Court judge's desire to separate Hoai's federal claims against Sunoco from the non-federal dispute between Hoai and Vo, it is questionable whether judicial economy would even be served by the stay. Consequently, we find that the principles of *Colorado River* cannot support the stay in this case.

### V. CONCLUSION

There is no indication that "vital state interests are involved" in this case, *Middlesex,* 457 U.S. at 432, 102 S.Ct. at 2521, justifying a stay or dismissal pursuant to the *Younger/Pennzoil* doctrine of equitable restraint. Nor has Sunoco demonstrated that "exceptional circumstances" justify a stay under the *Colorado River/Moses H. Cone* doctrine. Accordingly, the judgment of the District Court is reversed, and the case is remanded for a trial on the merits of the appellant's suit in federal court.

REVERSED.