Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued January 13, 2003      Decided April 18, 2003

No. 01-7129

DOROTHY HANDY,
APPELLANT

v.

SHAW, BRANSFORD, VEILLEUX & ROTH,
APPELLEE

————

Appeal from the United States District Court
for the District of Columbia
(No. 00cv02336)

————

Dorothy Handy argued the cause *pro se*.

*Aaron L. Handleman* argued the cause for the appellee. *George S. Mahaffey, Jr.* was on brief for the appellee.

Before: HENDERSON, RANDOLPH and GARLAND, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Dorothy Handy appeals *pro se* the dismissal of her malpractice lawsuit against the law firm of Shaw, Bransford, Veilleux & Roth (Shaw). She asserts that the district court erred in ruling that Rule 13 of the Federal Rules of Civil Procedure required her to file her malpractice claim against Shaw in a lawsuit already pending in the District of Columbia Superior Court (Superior Court) brought by Shaw against Handy to recover legal fees allegedly owing. A district court's authority to dismiss a case within its jurisdiction in favor of parallel local court proceedings is limited, however, and here the court overlooked both United States Supreme Court and Circuit precedent to that effect. *See, e.g.*, *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813–19 (1976); *Reiman v. Smith*, 12 F.3d 222, 223–24 (D.C. Cir. 1993); *Hoai v. Sun Refining & Mktg. Co., Inc.*, 866 F.2d 1515, 1518, 1520 (D.C. Cir. 1989).

## I.

Handy's malpractice claim against Shaw arose as a result of Shaw's representation of Handy in another case—Handy had hired Shaw to represent her in an employment discrimination suit against the United States Department of Transportation. The Department successfully defended against that claim and, subsequently, Shaw attempted to recover legal fees from Handy. Handy, in turn, alleged that Shaw's representation of her in that case constituted malpractice.

Shaw filed its original complaint on September 26, 2000 in Superior Court, seeking the recovery of fees allegedly owed by Handy. Shaw, however, failed to serve Handy before she filed *pro se* her malpractice complaint against Shaw in district court on September 29, 2000. Shaw's failure to serve Handy ultimately resulted in the Superior Court's dismissal of Shaw's claim on December 7, 2000. *Shaw, Bransford, Veilleux & Roth v. Handy*, Civ. No. 00–7138 (D.C. Super. Ct. Dec. 7, 2000). Handy, on the other hand, did successfully serve Shaw, which on November 21, 2000 moved to dismiss her

complaint for failure to state a claim upon which relief could be granted, namely, her alleged malpractice claim was required under FED. R. CIV. P. 13(a) to be brought as a compulsory counterclaim in the then-pending Superior Court litigation.

More than six months later, the district court granted Shaw's still-pending dismissal motion, dismissing without prejudice Handy's suit. *Handy v. Shaw, Bransford, Veilleux & Roth*, Civ. A. No. 00–2336 (D.D.C. June 5, 2001) (mem.) [*hereinafter* Mem. Op.].[1] It reasoned that Rule 13(a)'s requirement that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," compels a litigant to bring all claims arising out of the same transaction or occurrence in a single forum. Mem. Op. at 3–5. It first determined that Handy's malpractice claim "bears a clear, logical relationship" to Shaw's claim for unpaid legal fees, *id.* at 5, and, then, based on that determination, treated Handy's claim as a compulsory counterclaim under Rule 13(a). Because Shaw's lawsuit was filed three days before Handy's, the court said, Handy must file her claim there,[2] declaring that "to permit both claims to

---

[1] There is no dispute that Handy's case was within the district court's subject matter jurisdiction under 28 U.S.C. § 1332 (diversity).

[2] The district court was apparently unaware that in the interim between Shaw's motion to dismiss and its ruling thereon, Shaw's Superior Court case had been dismissed. Shaw filed a second action in Superior Court on March 1, 2001, making the same claim. Complaint, *Shaw, Bransford, Veilleux & Roth v. Handy*, No. 01–1664 ¶ ¶ 1–2 (D.C. Super. Ct. Mar. 1, 2001). Shaw had argued in support of its motion to dismiss that the first case filed ought to determine the forum in which both suits are litigated. Motion to Dismiss, *Handy v. Shaw, Bransford, Veilleux & Roth*, Civ. A. No. 00–2336 (D.D.C. Nov. 21, 2000). By the time the district court ruled on Shaw's motion to dismiss, however, its original Superior Court case had been dismissed and Handy's federal suit was then

proceed in separate forums would thwart the intent behind Rule 13." *Id.* at 7. The district court concluded that " 'the fairest and most efficient course would be to permit the parties to litigate all aspects of the dispute in the forum in which the controversy was first raised.' " *Id.* at 6–8 (quoting *Pumpelly v. Cook*, 106 F.R.D. 238, 240 (D.D.C. 1985)) (citing *Coates v. Ellis*, 61 A.2d 28, 30 (D.C. 1948)).

## II.

The district court based its Rule 12(b)(6) dismissal without prejudice on the compulsory counterclaim provision of FED. R. CIV. P. 13(a) and notions of judicial efficiency.[3] Generally, the district court's decision to decline jurisdiction in favor of an ongoing proceeding is reviewed for abuse of discretion. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983). Whether the lower court applied the proper legal standard in exercising that discretion, however, is a question of law reviewed *de novo. Id.*; *Reiman*, 12 F.3d at 223–24; *Wash. Metro. Area Transit Auth. (WMATA) v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980). As the district court noted, parallel litigation of factually related cases in separate fora is inefficient. Mem. Op. at 7 (use of Rule 13 to consolidate factually related cases justified because it is the resolution that "will best serve the interests of justice, as well as judicial economy"). Indeed, separate parallel proceedings have long been recognized as a judicial inconvenience. *Columbia Plaza Corp. v. Sec. Nat'l Bank*, 525 F.2d 620, 626 (D.C. Cir. 1975) ("Sound judicial administration counsels against separate proceedings, and the wasteful expenditure of

the first filed, that is, it pre-dated Shaw's *second* Superior Court action.

[3] The district court's rationale would more correctly have been based on the parallel compulsory counterclaim rule applicable in Superior Court, D.C. SUPER. CT. CIV. R. 13(a), inasmuch as the litigation began there. Assuming the district court meant to give effect to Superior Court Civil Rule 13 (although it cited FED. R. CIV. P. 13), that Rule is virtually identical in form and substance to the federal rule and therefore would lead to the same result.

5

energy and money incidental to separate litigation of identical issues should be avoided.") (footnotes omitted). For "reasons of wise judicial administration," *Colo. River*, 424 U.S. at 818, the district court is given discretion to dismiss or stay a pending suit in favor of a consolidated action in another forum but it is a discretion both the Supreme Court and our court have limited. *Moses H. Cone*, 460 U.S. at 19 ("[T]o say that the district court has discretion is not to say that its decision is unreviewable; such discretion must be exercised under the relevant standard prescribed by this Court [*viz.*] *Colorado River*'s exceptional-circumstances test. . . ."); *Reiman*, 12 F.3d at 224; *Columbia Plaza*, 525 F.2d at 627–28. In the case of parallel litigation in two federal district courts, the "general principle is to avoid duplicative litigation." *Colo. River*, 424 U.S. at 817 (citing *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). So long as the parallel cases involve the same subject matter, the district court should—for judicial economy—resolve both suits in a single forum. If there is a question whether the two cases involve the same subject matter, and hence, should be litigated in a single forum, we use Rule 13(a)[4] to answer the question. *Columbia Plaza*, 525 F.2d at 626–27 (using Rule 13(a) to conclude that ongoing suit in another district to recover on certain notes and suit filed in district court here challenging entire transaction—of which notes were part—were "of a single controversy"). Where the issues arise out

---

[4] Fed. R. Civ. P. 13(a) states:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

of the same "transaction," as they do here, the district court next decides which district court should adjudicate the case. *Id.* at 626–28. Although some courts make this determination by using the so-called "first-to-file" rule, *e.g.*, *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999); *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991), we have emphasized that the district court must balance equitable considerations rather than using a "a mechanical 'rule of thumb.'" *Columbia Plaza*, 525 F.2d at 628 (quotations omitted); *id.* ("It is not enough to undertake merely the task of inquiring into the applicability of relevant provisions of the Civil Rules and end the effort at that point."); *see also WMATA*, 617 F.2d at 830.

The district court determined that the two suits involved the same subject matter, relying on *Pumpelly v. Cook*, 106 F.R.D. 238, 239–40 (D.D.C. 1985), where the district court considered two factually related cases (one brought in our district court and the other in the Eastern District of Virginia) and, using its discretion, dismissed the case in favor of the parallel Virginia litigation. Mem. Op. at 4. Here, however, the district court determined that Rule 13(a) *mandated* the dismissal of Handy's action. *Id.* at 4 (Rule 13(a) imposes two-step inquiry to determine whether case should be dismissed in favor of alternative forum). While it is true that the purpose of Rule 13(a) is to consolidate logically related claims, it is usually applied in subsequent litigation on res judicata or estoppel principles. *Asset Allocation & Mgmt. Co. v. W. Employers Ins. Co.*, 892 F.2d 566, 572–73 (7th Cir. 1989) (rejecting FED. R. CIV. P. 13 as basis for enjoining federal district court from proceeding with parallel litigation) ("[T]he usual method by which [Rule 13] is enforced is simply by the plaintiff's pleading the judgment as res judicata in the defendant's suit.") (citing *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974); *Fagnan v. Great Cent. Ins. Co.*, 577 F.2d 418, 420 (7th Cir.), *cert. denied*, 439 U.S. 1004 (1978)); *Kane v. Magna Mixer Co.*, 71 F.3d 555, 562–63 (6th Cir. 1995) (adopting waiver or estoppel theory for enforcing Rule 13(a) compulsory counterclaim requirement in subse-

quent litigation), *cert. denied*, 517 U.S. 1220 (1996); *see generally* 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1417 (2d ed. 1990 & Supp. 2002) (explaining that failure to plead compulsory counterclaim under Rule 13(a) bars later claim on res judicata or estoppel principles).

The parallel proceedings, as already noted, took place in district court and in the Superior Court of the District of Columbia. Although the Superior Court is a congressionally created court and, thus, "federal" in its creation,[5] we have heretofore reviewed the district court's discretionary dismissal in favor of parallel proceedings in Superior Court under the standard applicable to a parallel state court proceeding. *See, e.g.*, *Reiman*, 12 F.3d at 223–25; *Hoai*, 866 F.2d at 1517–18, 1520–21; *see also Mahaffey v. Bechtel Assocs. Prof'l Corp.*, 699 F.2d 545, 546 (D.C. Cir. 1983) (per curiam) (reversing district court dismissal in favor of Superior Court because case was not within "narrowly circumscribed category in which, despite a statutory basis for federal jurisdiction, extraordinary factors warrant confining adjudication to a nonfederal forum," endorsing stay of local litigation) (citing *Colo. River*, 424 U.S. at 817–19). Thus, it is *Colorado River* (followed by us in *Reiman* and *Hoai*), and not *Columbia*

---

[5] District of Columbia Court Reorganization Act of 1970 (DCCRA), Pub. L. No. 91–358, tit. 1, sec. 111, 84 Stat. 473, 475–521 (codified at D.C. Code § 11–101 *et seq.*) (creating District of Columbia court system). Nevertheless, both our case law and other federal statutes treat the D.C. courts like state courts. *See, e.g.*, *United States v. Dist. of Columbia*, 669 F.2d 738, 741 n.4 (D.C. Cir. 1981) ("The [DCCRA] was intended to create a local court system similar in major respects to court systems in the several states.") (citations omitted); *Steorts v. Am. Airlines, Inc.*, 647 F.2d 194, 196 (D.C. Cir. 1981) ("From [the passage of the DCCRA] onward, the relationship of the federal to the local judiciary was to be akin to that historically existent in the states."). *See also, e.g.*, 28 U.S.C. §§ 1257(b) (treating D.C. Court of Appeals as state court for certiorari), 1451 (treating Superior Court as state court for removal); 2113 (treating D.C. Court of Appeals as state court).

*Plaza*, *Pumpelly* or any compulsory counterclaim rule as the district court believed, that applies here.

Because the Supreme Court has consistently reinforced "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," *Colo. River*, 424 U.S. at 817, it has sanctioned the " '[a]bdication of the obligation to decide cases [as] justified . . . only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.' " *Moses H. Cone*, 460 U.S. at 14 (quoting *Colo. River*, 424 U.S. at 813); *see Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). Countervailing interests identified by the Supreme Court in abstention doctrines that predate *Colorado River* include federalism and comity.[6] Our court has questioned whether abstention should apply *vis-à-vis* the Superior Court to the same extent it does in the federal-state context.[7] Nevertheless, *Colorado River* recognizes as a coun-

---

[6] The three abstention rules that preceded *Colorado River* include the *Younger/Pennzoil* abstention, *see Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 10–12 (1987) (abstention where there is federal/state conflict and considerations of comity and federalism dictate federal court should defer to state proceedings); *see also Younger v. Harris*, 401 U.S. 37, 43–45 (1971), the *Pullman* abstention, *Harris County Comm'rs Ct. v. Moore*, 420 U.S. 77, 83 (1975) (abstention to avoid premature constitutional adjudication where there exists unsettled question of state law); *see also R.R. Comm. of Texas v. Pullman Co.*, 312 U.S. 496 (1941); and the *Burford* abstention, *Colo. River*, 424 U.S. at 814–15 (abstention where there exist "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"); *see also Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

[7] *Silverman v. Barry*, 727 F.2d 1121, 1123 n.4 (D.C. Cir. 1984) (noting "threshold question of whether the abstention rules, doctrinally based on concerns of federalism and comity, apply at all in the District of Columbia, a creature of Congress"), *cert. denied*, 488 U.S. 956 (1988). As we noted in an earlier case,

It may well be that the abstention doctrine is rooted in federalism interests which—with all their historic underpinnings, the tension between federal powers and state sovereign-

tervailing interest "wise judicial administration," *Colo. River*, 424 U.S. at 817 (internal quotations omitted), an interest as relevant as between the district court and the Superior Court as it is between the district court and a state court. Moreover, when the issues raised in the parallel proceedings are ones of local law, Superior Court judges presumably have as much expertise as would a state court judge in deciding questions of state law. This is one reason that we defer to the local courts' interpretations of the D.C. Code in the same manner that other federal courts defer to state court interpretations of state law. *See United States v. Edmond*, 924 F.2d 261, 264 (D.C. Cir.), *cert. denied*, 502 U.S. 838 (1991). The Congress's treatment of D.C. courts as state courts for certain purposes, *see supra* note 5, also counsels in favor of our making the same analogy.

---

ty, and the concern for local political autonomy—make the abstention doctrine inapposite in the unique District. It may be that, in defining the relationship between the local and Federal courts within the District, cases articulating the doctrine of abstention in the context of a Federal-state relationship are instructive, but not necessarily controlling. On the other hand it may be that, in enacting the District of Columbia Court Reorganization Act of 1970, Congress intended a relationship between the Federal courts and the local statutory courts to be patterned in full measure on the relationship between Federal and state tribunals in other parts of the country.

*Sullivan v. Murphy*, 478 F.2d 938, 962 n.35 (D.C. Cir.), *cert. denied*, 414 U.S. 880 (1973); *see also Spivey v. Barry*, 665 F.2d 1222, 1229 n.16 (D.C. Cir. 1981) (quoting *Sullivan*, 478 F.2d at 962 n.35). In fact, we have previously applied only the *Pullman* doctrine to the District of Columbia. *Justice v. Super. Ct. of D.C.*, 732 F.2d 949, 950 (D.C. Cir. 1984) (application of *Pullman* abstention); *but see id.* at 953 & n.20 (Robinson, C.J., dissenting). *See LaShawn A. v. Kelly*, 990 F.2d 1319, 1322 (D.C. Cir. 1993) ("This Court has never decided whether the District of Columbia is a state for *Younger* abstention purposes."), *cert. denied*, 510 U.S. 1044 (1994); *Dist. Props. Assocs. v. Dist. of Columbia*, 743 F.2d 21, 28 n.5 (D.C. Cir. 1984) (*Burford* abstention "never applied to" District of Columbia).

We emphasize, as has the Supreme Court, that the district court may exercise its discretion to decline jurisdiction for the purpose of judicial economy only in truly "exceptional circumstances." *Moses H. Cone*, 460 U.S. at 14; *see Colo. River*, 424 U.S. at 815, 817–19; *Hoai*, 866 F.2d at 1518. It may do so only after weighing a number of factors, including the inconvenience of the federal forum, the order in which the courts assumed jurisdiction, the desirability of avoiding piece-meal litigation, whether federal or state law controls and whether the state forum will adequately protect the interests of the parties. *Colo. River*, 424 U.S. at 817–18; *Moses H. Cone*, 460 U.S. at 25–26; *Reiman*, 12 F.3d at 223; *see also Burns v. Watler*, 931 F.2d 140, 146 (1st Cir. 1991) (listing principal factors courts consider under *Colorado River* and *Moses H. Cone*). In the district court's analysis, "[n]o one factor is necessarily determinative; [but] a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colo. River*, 424 U.S. at 818–19. "[O]nly truly 'exceptional circumstances' will allow a federal court to stay or dismiss a federal action in favor of a concurrent action before a state court." *Hoai*, 866 F.2d at 1518. Indeed, the balance is "heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16; *Reiman*, 12 F.3d at 223–24.

It does not appear that the district court engaged in the deliberative balancing required by *Colorado River* and *Moses H. Cone* and applied in *Reiman*, 12 F.3d at 223–24, and *Hoai*, 866 F.2d at 1518, 1520–21. In fact, the district court did not discuss *Colorado River* or related precedent. While its objective, that is, pursuing the " 'most efficient course,' " Mem. Op. at 7 (quoting *Pumpelly*, 106 F.R.D. at 240), is a relevant consideration under *Colorado River*, the district court failed to weigh the efficiency goal against its primary obligation to exercise its jurisdiction. Here at least three factors should be weighed: First, Shaw's Superior Court suit had been dismissed by the time the district court acted; second, no substantial proceedings had occurred in Superior Court, *see Moses H. Cone*, 460 U.S. at 21–22 ("priority should not be

measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions"; fact that "[i]t was the state-court suit in which no substantial proceedings ... had taken place" weighed against stay of federal action); and third, the effect of the applicable statute of limitations. *LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1561–62 (7th Cir. 1989) (district court should stay rather than dismiss case if state statute of limitations is bar); *see also Hoai*, 866 F.2d at 1517 ("[I]t might be appropriate to stay rather than dismiss a case if dismissal is otherwise justified . . . .") (citations omitted).

## III.

For the foregoing reasons, we conclude that the district court's dismissal of Handy's claim constitutes legal error. Accordingly, the judgment of the district court is reversed and the case is remanded for further consideration consistent with this opinion.

*So ordered.*