John Edward **HURLEY**, et al., Plaintiffs,

v.

Vicki **HEILIG**, et al., Defendants.

No. CIV. A. 98–616(RMU).

United States District Court,
District of Columbia.

Nov. 12, 1998.

Edwin Harold Harvey, Washington, DC, for Plaintiffs

Patrick Thomas Hand, Crowley, Hoge & Fein, P.C., Washington, DC, for Defendants.

### *MEMORANDUM OPINION*

### GRANTING DEFENDANTS' MOTION TO DISMISS

URBINA, District Judge.

### I. INTRODUCTION

This matter comes before the court upon defendants' motion to dismiss and plaintiffs'

---

opposition thereto.[1] Defendants Vicki Heilig and Mary Maxfield (hereinafter collectively referred to as "defendants") request that the court dismiss the instant action because the issues and relief requested in it are encompassed by an active case currently pending in the Superior Court of the District of Columbia (hereinafter referred to as "the Superior Court"). In opposing defendants' request, Plaintiffs John and Doris Hurley (hereinafter collectively referred to as "plaintiffs") state that the Superior Court litigation is not "pending" and, consequently, the court should not dismiss the instant action. After a thorough review of the parties' submissions and the relevant law, the court concludes that defendants are entitled to the relief they seek.

## II. BACKGROUND

As is evidenced by both plaintiffs' and defendants' submissions, there is a long and acrimonious litigation history between these individuals. The court will not attempt to recap this entire history but rather will limit itself to an exposition of the undisputed facts relevant to the reasoning underlying this memorandum opinion. Both plaintiffs and defendants are members of the board of trustees of the Confederate Memorial Association, Inc. (CMA). Plaintiffs and defendants have been involved in litigation in the Superior Court in case number 5211–88 since 1988. This litigation encompasses many issues, the latest of which is the sale of a building owned by the CMA (hereinafter referred to as the "CMA mansion"). The proposed sale of this property was apparently the source of much debate between plaintiffs and defendants in their respective positions on the CMA board of trustees. Plaintiffs were among the majority of board members who voted to approve the sale of the property. Defendants were among the minority of board members who voted not to approve the sale of the property. Defendants allege in the Superior

Court action that plaintiff John Hurley had a personal financial interest in the sale of the property and therefore his participation as the president of the board of trustees in discussions pertaining to the sale was suspect.

Defendants made an attempt to stop the sale of the CMA mansion by filing a motion for a temporary restraining order in the Superior Court on December 23, 1997. Judge John H. Bayly, who had presided over much of the litigation of the parties in Superior Court, initially entertained this motion on December 23, 1997. Judge Bayly declined to issue the TRO on that date. Judge Bayly heard a renewed motion for a TRO by the Superior Court plaintiffs on December 31, 1997. After learning during the hearing that the CMA mansion had already gone to closing, Judge Bayly dismissed the motion for the TRO as moot.

On or about January 14, 1998, defendants and others filed a pleading in the Superior Court seeking injunctive relief and the appointment of a receiver in conjunction with the already completed sale of the CMA mansion. On or about January 23, 1998, an answer was filed by John Hurley claiming various defenses to the pleading filed on January 14th. Two more pleadings were filed in the Superior Court litigation in the first week of March, 1998.[2] The complaint serving as the genus for the controversy currently before this court was filed March 11, 1998.

## III. ANALYSIS

■ There are several factors that the court must consider when deciding whether to exercise jurisdiction over a matter that is simultaneously being litigated in a state court. Specifically, the court must examine (1) whether the state court has assumed jurisdiction over the property, (2) the relative inconvenience of the federal and state forums, (3) the desirability of stopping piece-

---

1. Plaintiffs' opposition also included an "emergency" request for a "speedy hearing pursuant to Rule 59." (*See* Pls.' Opp'n to Mot. to Dismiss and Emergency Mot. for Speedy Hr'g Pursuant to Rule 59.) The court denied plaintiffs' request for such a hearing in an order dated April 23, 1998.

2. In addition, Judge Bayly had scheduled and/or commenced at least two hearings, on March 20, 1998 and April 23, 1998, to address issues directly related to the Superior Court litigation. (*See* Pls.' Opp'n at 5 n. 3.)

meal litigation, and (4) the order in which jurisdiction was obtained by the courts. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817–21, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In addition, the court must also consider whether federal law or state law provides the rule of decision and whether the state forum will adequately protect the interests of the parties. *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation,* 460 U.S. 1, 23–27, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); The presence or absence of any one factor is not "necessarily determinative." *See Colorado River,* 424 U.S. at 819, 96 S.Ct. 1236. Rather, a "carefully considered judgment [by the court,] taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *See id.* at 819–20, 96 S.Ct. 1236. Finally, the court is mindful that only under "exceptional circumstances" should a federal court "dismiss a federal action in favor of a concurrent action before a state court." *Hoai v. Sun Refining and Marketing Co., Inc.,* 866 F.2d 1515, 1518 (D.C.Cir.1989).

■ Applying the *Colorado River* and *Moses H. Cone Memorial Hospital* factors to the facts in this case, the court finds that there are exceptional circumstances dictating that the current action be dismissed. With respect to the first factor identified in *Colorado River,* it appears from the record that neither the Superior Court nor the District Court has obtained exclusive control over the CMA mansion. Consequently, this factor does not suggest that the court should dismiss this action. As to the second factor, there is no inconvenience to the parties as the Superior Court and the District Court are only a few hundred feet apart from one another. Accordingly, this factor is also not helpful to the court in arriving at a decision regarding whether or not to dismiss this case.

The third and fourth factors, however, both weigh in favor of dismissing the action. First, allowing both of these suits to continue to go forward would most assuredly result in messy, piecemeal litigation. Having the parties litigate identical questions of law applied to identical facts in two separate forums could result in contradictory or, at a minimum, irreconcilable rulings. Accordingly, it is highly desirable for one court to decide the identical issues presented by the respective complaints.

Next, the Superior Court obtained jurisdiction over this matter well before the complaint in the instant action was filed here in District Court. The Superior Court has been the forum for these parties, among others, to engage in protracted litigation beginning in 1988 in case no. 5211–88. The parties eventually settled their differences in 1991; however, the Superior Court began entertaining the parties' differences with respect to the sale of the CMA mansion in December, 1997, approximately two and one half months before this suit was filed. Consequently, the Superior Court obtained jurisdiction over this matter first. This fourth factor of the *Colorado River* opinion is not meant to be read too mechanically, however. *See Moses H. Cone Memorial Hospital,* 460 U.S. at 21, 103 S.Ct. 927. Rather, the test should be applied "in a pragmatic, flexible manner with a view to the realities of the case at hand." *See id.* Priority, therefore, should "not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *See id.* Here, the parties' submissions indicate that the Superior Court has received numerous filings and conducted hearings on this matter and therefore has, at least preliminarily, begun to address the underlying legal issues present in both cases. (*See* Compl. for Declaratory J. ¶¶ 17, 18, 20–25.) Consequently, an analysis of this factor suggests that this case should be dismissed in favor of the ongoing Superior Court litigation.

In addition, the two factors discussed in *Moses H. Cone Memorial Hospital* also support the conclusion that this case should be dismissed. First, this case does not involve a question of federal law.[3] The parties' respec-

---

**3.** Even though plaintiffs' bring this action pursuant to 28 U.S.C. Section 2201, the Declaratory Judgment Act, this statute does not convey federal question jurisdiction. *See American Mfrs. Mut.*

tive complaints in Superior Court and here in District Court revolve around issues of fiduciary duty and the rights of beneficiaries of a trust, both of which are governed by local law. (*See* Compl. for Declaratory J. ¶¶ 22, 23.) Second, given that the issues in both cases turn on local law, the Superior Court will be in no less a position than this court to adequately protect the interests of the parties.[4]

Importantly, the facts in the present case are strikingly similar to those in *Delaney v. Capitol Hill Anesthesia Associates, P.C., et al.*, 602 F.Supp. 1069 (D.D.C.1985). The dispute in *Delaney* revolved around three physicians and the operation of a District of Columbia professional corporation. *See id.* at 1069. In *Delaney*, two physicians filed a suit in Superior Court against the third physician. *See id.* Within a few hours of that suit being filed, the lone doctor who was the defendant in the Superior Court case filed suit in this court against the two plaintiff doctors from the Superior Court suit. *See id.* Subject matter jurisdiction over this suit was based on diversity. *See id.* While the Superior Court case and the District Court case did not ask for precisely the same type of relief, they both encompassed similar "factual issues that [had to] be developed and resolved before any order of dissolution of the professional corporations" could be issued. *See id.* Moreover, the Superior Court case included other parties, not present in the District Court case, who were involved in the underlying controversy. *See id.* Importantly, these parties were non-diverse and would have destroyed the diversity basis for jurisdiction had they been included in the District Court suit. *See id.* at 1070 n. 10. The court concluded, after reviewing the factors in *Colorado River* and *Moses H. Cone Memorial Hospital,* that the District Court case should be dismissed as the underlying controversy was purely a local matter turning on local

law that involved no federal issues. *See id.* at 1070.

As stated previously, this case, like *Delaney,* is an entirely local dispute. It involves parties serving on the board of trustees of a nonprofit corporation, the CMA, organized and governed under the laws of the District of Columbia. (*See* Compl. for Declaratory J. ¶ 6.) While diversity jurisdiction technically exists in this case, as it did in *Delaney,* that fact does not mandate this court exercising jurisdiction. As stated in *Delaney,* diversity jurisdiction was created to establish "'independent tribunal[s] ... unaffected by local prejudices and sectional views.'" *See id.* at 1069 (quoting *Burgess v. Seligman,* 107 U.S. 20, 34, 2 S.Ct. 10, 27 L.Ed. 359 (1883)). Here, like in *Delaney,* although the parties are diverse with respect to their geographic residences, they all have "embraced the District of Columbia" through their affiliation with the CMA. *See Delaney,* 602 F.Supp. at 1069. Also, similar to *Delaney,* there are no issues of federal law present in this case. Lastly, as in *Delaney,* if this case were to proceed in both the Superior Court and this court, there would be a substantial duplication of judicial effort and resources. The relief sought in both the Superior Court case and the instant matter is the same, that is, declaratory relief with respect to the validity of the sale of the CMA mansion. (*See* Compl. for Declaratory J. ¶¶ 23, 31.) Consequently, having two different courts address this same issue would result in an "unseemly race to the finish line between the two actions [with] the winner seeking to impose the rules of *res judicata* in the other action." *See Delaney,* 602 F.Supp. at 1070. Accordingly, "wise use of judicial resources" favors dismissal of plaintiffs' action. *See id.*

### CONCLUSION

For the reasons stated in this memorandum opinion, defendants' motion to dismiss

---

*Ins. Co. v. Manor Inv. Co.,* 286 F.Supp. 1007, 1010 (S.D.N.Y.1968). Rather, this statute provides a remedy to a party in an action over which a court has exercised some other grounds of subject matter jurisdiction. *See id.*

4. Despite plaintiffs' apparent dissatisfaction with the manner in which they, their attorneys, and

the legal issues surrounding their case have been dealt with by Judge Bayly of the Superior Court, there is nothing in the submissions of the parties to suggest that Judge Bayly or the Superior Court would not adequately protect the interests of all of the parties engaged in the litigation pending in that court.

shall be granted. The required order directing the parties in a fashion consistent with this memorandum opinion is separately and contemporaneously executed and issued this 12 day of November, 1998.