James **FOSTER–EL** et al., Plaintiffs,

v.

**BERETTA U.S.A. CORP.**
**et al., Defendants.**

**No. CIV. A. 00–1650(RMU).**

United States District Court,
District of Columbia.

Sept. 28, 2001.

A. Stephen Hut, Jr., Wilmer, Cutler & Pickering, Dennis A. Henigan, Roderic V.O. Boggs, Washington Lawyers' Committee for Civil Rights and Urban Affairs, Washington, DC, for Plaintiffs James and Michelle Foster–el.

Catherine A. Bledsoe, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC, Baltimore, MD, for Defendant Beretta U.S.A. Corp.

Paul R. Reichert, Jones, Day, Reavis & Pogue, Washington, DC, for Defendant Colt's Manufacturing Co., Inc.

### *MEMORANDUM OPINION*

URBINA, District Judge.

### GRANTING THE PLAINTIFFS' MOTION TO STAY PROCEEDINGS

### I. INTRODUCTION

This case arises out of a shoot-out that took place in the District of Columbia. Helen Foster-el, an innocent bystander, was caught in gunfire between neighboring youths and killed on June 21, 1999. On June 20, 2000, James Foster-el, her husband, and Michelle Foster-el, one of her daughters (collectively, "the plaintiffs"), individually and as personal representatives of her estate, moved to amend the complaint in a District of Columbia Superior Court case related to the shoot-out, to join the other plaintiffs in that case. The same day, the plaintiffs also filed suit in D.C. Superior Court against various gun manu-

facturers ("the defendants") alleging liability for Ms. Foster-el's death under various tort theories ("the instant case").

The defendants removed the instant case to federal court. Three months later, the Superior Court judge in the related case allowed the plaintiffs to amend the complaint to join the plaintiffs in the related case. The plaintiffs now move to stay proceedings in the instant case.

## II. BACKGROUND

### A. The Shooting Incident

On June 21, 1999, Helen Foster-el ("Ms.Foster-el") was injured and killed during a shoot-out between youths in the East Capitol Dwellings housing project in the District of Columbia. *See* Compl. at 4, 10. Two of the young men were armed with 9–millimeter handguns. *See id.* at 10. After the firing began, bystanders started to scatter. *See id.* Some residents ran into their homes or into other neighbors' homes as Ms. Foster-el tried to protect nearby children from harm. *See id.* As she guided one girl into a house, she was shot in the back and in the leg. *See id.* Ms. Foster-el died soon after the shooting in front of one of her daughters, Prudence Foster-el. *See id.*

The police recovered more than 20 9–millimeter shell casings at the crime scene. *See id.* During the autopsy, one 9–millimeter bullet was found in Ms. Foster-el's chest and another in her leg. *See id.* at 11. In connection with the shooting, one man has pleaded guilty to second-degree murder, another man was found guilty of manslaughter, and two other men have been charged with related crimes. *See id.*

### B. Theories of Liability

The parties have little, if any, disagreement about the facts. Rather, their dispute focuses on who should be held liable for Ms. Foster-el's death. The plaintiffs essentially contend that the gun-manufacturing industry is at fault.[1] The plaintiffs allege liability for Ms. Foster-el's death under three different theories. Count I alleges strict liability, Count II alleges negligent distribution of firearms, and Count III alleges that the defendants are collectively liable to the plaintiffs. *See id.* at 19–21.

In Count I, the plaintiffs allege that the defendants are strictly liable under the District of Columbia's Assault Weapons Manufacturing Strict Liability Act, D.C.Code § 7–2551.01 *et seq* ("the Strict Liability Act"). *See id.* at 12–13, 19–20. The plaintiffs claim that the defendants have "manufactured, imported, or sold one or more assault weapons ... or one or more machine guns (as defined by the [D.C.Code] )." *See id.* at 19. According to the plaintiffs, the defendants have proximately caused Ms. Foster-el's death and are liable under the Strict Liability Act. *See id.* at 12–13, 19–20.

In Count II, the plaintiffs allege that the defendants are liable for negligently distributing firearms in the District of Columbia. *See id.* at 20–21. According to the plaintiffs, the defendants had a duty "to

1. The complaint names the following 25 gun manufacturers from around the world as defendants: Beretta U.S.A. Corp., B.L. Jennings, Inc., Browning Arms Company, Bryco Arms, Inc., Carl Walther GMBH, Century International Arms, Inc., Colt's Manufacturing Company, Inc., Davis Industries, Inc., Fabrica D'Armi Pietro Beretta S.P.A., Forjas Taurus, S.A., Glock, Inc., Glock Ges.m.b.H., H & R 1871 Inc., Heckler & Koch, Inc., Heckler & Koch, GMBH, Hi–Point Firearms, International Armament Corp., d/b/a Interarms Industries, Inc., K.B.I., Inc., Navegar, Inc. d/b/a Intratec, Norinco Sports U.S.A., Inc., Phoenix Arms, Inc., Sigarms, Inc., Smith & Wesson Corp., Strum, Ruger & Company, Inc., and Taurus International Manufacturing, Inc. *See* Compl. at 1–3.

not create an unreasonable risk of foreseeable harm from the distribution of their firearms, and to take reasonable steps to limit this risk once it had been created." *See id.* at 20. The plaintiffs claim that the defendants breached their duty by, for example, failing: to adequately investigate or screen their distributors and dealers; to adequately monitor, supervise, and regulate their distributors' and dealers' methods of distributing and selling firearms; and to adequately train and encourage their distributors and dealers to ensure compliance with federal, state, and District of Columbia laws. *See id.* at 17. According to the plaintiffs, the defendants have proximately caused Ms. Foster-el's death and are liable for negligent distribution of their firearms. *See id.* at 20–21.

In Count III, the plaintiffs allege that, in addition to individual liability, the defendants are collectively liable to the plaintiffs because the defendants' "tortious conduct has collectively caused the circumstances" that caused Ms. Foster-el's death. *See id.* at 21.

## C. Procedural History

On June 20, 2000, the plaintiffs moved to amend the complaint in a case related to the instant action, *District of Columbia and Bryant Lawson v. Beretta U.S.A. Corp., et al.* ("the *Lawson* case"), to join the other plaintiffs in that case. *See* Pls.' Mot. to Stay Proceedings at 1. On the same day, the plaintiffs also filed the instant case to preserve certain causes of action before the statute of limitations expired in case the plaintiffs' motion to amend the complaint in the *Lawson* case was not granted or was challenged on appeal.[2] *See id.* at 1–2. On July 12, 2000, defendant Colt's Manufacturing Company, Inc. removed the instant case to this court pursuant to 28 U.S.C. § 1441(a).[3] *See id.* at 1. After being added to the *Lawson* case, the plaintiffs moved to stay proceedings in the instant case.[4] *See id.* at 1–2.

## III. ANALYSIS

### A. The *Colorado River* Doctrine

■ Despite the district court's "unflagging obligation" to exercise the jurisdiction it has been granted, the Supreme Court has articulated various exceptions setting forth when a federal court can abstain from exercising jurisdiction. *See generally, Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). For example, the district court may abstain from exercising jurisdiction in certain exceptional circumstances of parallel, duplicative litigation in the interest of sound "judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *See id.* at 817, 96 S.Ct. 1236 (citations omitted).

In *Colorado River,* the United States brought suit in federal court seeking a declaration of water rights on various federal lands. *See id.* at 805–06, 96 S.Ct. 1236. One of the defendants subsequently moved

---

2. The plaintiffs have offered to voluntarily dismiss the instant case if the defendants agree to waive their statute of limitations defenses against them. *See* Pls.' Mot. to Stay Proceedings at 2. The court is not aware of any response by the defendants to this request.

3. Section 1441(a) provides, in pertinent part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be re-

moved by the ... defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

4. The plaintiffs were added to the *Lawson* case on October 10, 2000 when D.C. Superior Court Judge Joan Zeldon granted their motion to amend the complaint. *See* Pls.' Mot. to Stay Proceedings at 1.

to join the United States as a party to a state-court proceeding to adjudicate all the claims made by the United States in federal court. *See id.* at 806, 96 S.Ct. 1236. After the United States was served, other defendants moved to dismiss the federal action for lack of subject-matter jurisdiction. *See id.* at 806, 96 S.Ct. 1236.

Without deciding jurisdiction, the district court stayed proceedings because "the doctrine of abstention required deference" to the state court. *See id.* The Tenth Circuit reversed, holding that the district court had jurisdiction and that abstention was inappropriate. *See id.* The Supreme Court reversed the Tenth Circuit and reinstated the stay. *See id.* at 821, 96 S.Ct. 1236.

Subsequent cases have clarified that the court should not look for reasons to exercise jurisdiction, but should determine "whether there exist 'exceptional' circumstances, the 'clearest of justifications,' ... to justify the *surrender* of jurisdiction." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 25–26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see also Hoai v. Sun Refining & Marketing Co.,* 866 F.2d 1515, 1518, 1520–21 (D.C.Cir. 1989).

■ The Supreme Court has articulated the following factors that district courts need to consider in determining whether a case qualifies as exceptional under the *Colorado River* doctrine: (1) whether one court assumed jurisdiction over property first; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order of jurisdiction in the concurrent forums; *see Colorado River,* 424 U.S. at 818, 96 S.Ct. 1236; (5) whether the case involves federal law; and (6) whether the state-court proceeding can adequately protect the parties' rights; *see Moses H. Cone,* 460 U.S. at 23–26, 103 S.Ct. 927.

## B. Application of the *Colorado River* Doctrine

### 1. Order of Jurisdiction Over Property

■ Generally, a court that assumes jurisdiction over property first may exercise that jurisdiction to the exclusion of other courts. *See Colorado River,* 424 U.S. at 818, 96 S.Ct. 1236 (citations omitted). This case, however, does not involve jurisdiction over property. Accordingly, this first factor does not weigh in favor of or against abstention.

### 2. Inconvenience of the Federal Forum

If the federal forum is inconvenient for the parties involved, the second factor of the *Colorado River* doctrine favors abstention. *See id.* In this case, the D.C. Superior Court and this court are physically located only a few hundred feet apart. *See Hurley v. Heilig,* 28 F.Supp.2d 33, 35 (D.D.C.1998) (Urbina, J.) (holding that there is no inconvenience of federal forum because the Superior Court and this court are in physical proximity to each other). Accordingly, this second factor does not weigh in favor of or against abstention.

### 3. Avoiding Piecemeal Litigation

■ Generally, the desirability of avoiding piecemeal litigation favors abstention. *See Colorado River,* 424 U.S. at 818, 96 S.Ct. 1236. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Travelers Indemnity Co. v. Madonna,* 914 F.2d 1364, 1369 (9th Cir.1990) (citations omitted).

The plaintiffs argue that allowing the instant case to proceed would lead to piecemeal litigation. *See* Pls.' Mot. to Stay Proceedings at 5. The defendants counter

by relying on cases that declined to stay federal proceedings because of "mirror" actions in the Superior Court. *See* Defs.' Opp'n to Mot. for Stay ("Defs.' Opp'n") at 5 (citing *Johnston Lemon & Co., Inc. v. Smith*, 882 F.Supp. 4, 5 (D.D.C.1995)). In *Johnston*, the court relied on the fact that the federal action and the Superior Court case were "mirrors" of each other. *See id.* In other words, the "decision of . . . one court . . . will dispose of *all the parties'* claims" in the other suit. *See id.* (emphasis added).

However, this court's decision in the instant case will not dispose of all the parties' claims in the *Lawson* case. Even if proceedings continued in the instant case, the remaining plaintiffs in the *Lawson* case will not be bound by this court's decisions. Moreover, allowing the proceedings to continue in this count would "result in messy, piecemeal litigation" because the parties would "litigate identical questions of law applied to identical facts in two separate forums." *See Hurley*, 28 F.Supp.2d at 35. This could lead to "contradictory or, at a minimum, irreconcilable rulings." *See id.* In sum, the desirability of avoiding piecemeal litigation in the instant case strongly favors abstention.

### 4. Order of Jurisdiction

The complaint in the *Lawson* case was filed on January 20, 2000 in the D.C. Superior Court. *See* Pls.' Mot. to Stay Proceedings at 4. The motion to amend the complaint to add the plaintiffs in the *Lawson* case and the complaint filed in the instant case were both filed on June 20, 2000. *See* Defs.' Opp'n at 6. The plaintiffs point out that the Superior Court has already ruled on several motions in the *Lawson* case. *See* Pls.' Mot. to Stay Proceedings at 4 (noting that the Superior Court has granted two motions to amend the complaint and has received "extensive briefing" on a motion for judgment on the pleadings).

The defendants counter by arguing that the order of filing and the plaintiffs' choice of forum do not justify a stay. *See* Defs.' Opp'n at 6. The defendants assert that the *Lawson* case is "barely ahead of this matter" and the Superior Court does not have "any greater familiarity with the issues" because the *Lawson* case has been reassigned to another judge. *See id.*

■ At the outset, the court notes that the order-of-jurisdiction factor should not be applied mechanically. *See Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. 927. Rather, the factor should be applied "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* Priority, therefore, should "not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Id.*

Applying this standard, the court notes that the complaint in the *Lawson* case was filed five months before the complaint in the instant case. In addition, the Superior Court has made more progress in the *Lawson* case than this court has made in the instant case. The Superior Court has ruled on two motions to amend the complaint and has received "extensive briefing" on a motion for judgment on the pleadings. *See* Pls.' Mot. to Stay Proceedings at 4. Similar progress has yet to occur in the instant case. In the instant case, the defendants have filed a motion for judgment on the pleadings. The plaintiffs, however, have not filed their opposition because they moved to stay the proceedings. Accordingly, the defendants' motion has not been fully briefed. Furthermore, contrary to the defendants' assertion, the re-assignment of the judge in the *Lawson* case is not that significant. A case's progress depends on the *case's* docket. And in this case, for example, the re-assignment

of the case to a new judge will not change the fact that the first judge already ruled on two motions to amend the complaint and that the defendants' motion for judgment on the pleadings is already fully briefed.

The defendants also assert that the plaintiffs chose both of their forums and cannot complain now about proceeding in a federal forum. *See* Defs.' Opp'n at 6–7. This argument is unpersuasive. The plaintiffs did not choose to bring this case in federal court, but chose to bring their suit in the Superior Court. *See* Pls.' Mot. for Stay Proceedings at 1. Not only did the plaintiffs not choose the federal forum, they also tried to avoid bringing a separate case at all. Indeed, the plaintiffs have offered to voluntarily dismiss the instant case if the defendants agree to waive their statute of limitations defenses against them. *See id.* at 2.

In sum, the Superior Court has made more progress in the *Lawson* case than this court has made in the instant case and the plaintiffs did not "choose" the federal forum. Accordingly, the order-of-jurisdiction factor favors abstention.

### 5. Source of Law

■ Generally, litigation involving a federal law weighs against a federal court's abstention. *See Moses H. Cone,* 460 U.S. at 23–24, 103 S.Ct. 927. It does not, however, follow that absence of a federal law always warrants abstention. *See Johns v. Rozet,* 770 F.Supp. 11, 16 (D.D.C.1991).

This case involves difficult questions of state law and policy. The plaintiffs' case centers on the District of Columbia's Strict Liability Act. This Act is unique to the District of Columbia and attempts to protect the health, safety, and welfare of District residents. Furthermore, the D.C. courts have yet to interpret the Act. Because this matter involves difficult—and perhaps novel—questions of local law and policy, the source-of-law factor favors abstention. *See American Bankers Ins. Co. v. First State Ins. Co.,* 891 F.2d 882, 886 (11th Cir.1990) (stating that cases that "involve complex questions of state law ... would best be resolved by a state court"); *Arkwright–Boston Mfrs. Mut. Ins. Co. v. City of New York,* 762 F.2d 205 (2d Cir. 1985) (abstention warranted because of novel state law issues involving local safety codes); *cf. Giardina v. Fontana,* 733 F.2d 1047, 1053 (2nd Cir.1984) (abstention not warranted because state law issues were of "garden variety").

### 6. Adequacy of State Court to Protect Rights

The last factor concerns the adequacy of the Superior Court to protect the parties' rights. The defendants argue that the *Lawson* case may take longer to adjudicate. *See* Defs.' Opp'n at 8–9. While this may be true, it is unclear how litigating the issues piecemeal would mitigate these concerns. Furthermore, the more comprehensive nature of the *Lawson* case favors abstention. *See Sheehan,* 102 F.Supp.2d at 5. Similarly, because the instant case involves only local law, "the Superior Court will be in no less a position than this court to adequately protect the interests of the parties." *See Hurley,* 28 F.Supp.2d at 36.

The defendants also argue that the *Lawson* case is complex and "creates inherent difficulties for the Superior Court and, in particular, for the jury." *See* Defs.' Opp'n at 8–9. First, the defendants do not point to any particular reason, nor is the court aware of any, why the Superior Court would have difficulty interpreting District of Columbia law. *See id.* at 9. Second, the defendants do not point to any particular reason, nor is the court aware of any, why it would prejudice them for a Superior Court jury, drawn from the same pool of prospective jurors that this court utilizes,

74

to resolve complex issues. *See id.* The Superior Court is more than capable of handling the *Lawson* case and has measures available to ensure that parties are not prejudiced in any way by the jury. Without a more specific showing, this court will not accept the defendants' feeble and baseless argument that the Superior Court will have "difficulties" adjudicating the *Lawson* case because it is "complex." In sum, the parties' rights in the *Lawson* case will be protected in the Superior Court action.

Accordingly, this last factor favors abstention. Because four of the six factors under the *Colorado River* doctrine weigh heavily in favor of abstention (and two are neutral), the court will abstain from exercising its jurisdiction.

## IV. CONCLUSION

For all these reasons, the court grants the plaintiffs' motion to stay proceedings. An Order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 28 day of September, 2001.